UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JONATHAN WILLIAMS | CIVIL ACTION |
| VERSUS | NO. 18-1999 |
| STATE OF LOUISIANA | SECTION: "I"(3) |

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Jonathan Williams, is a state prisoner incarcerated at the Dixon Correctional Institute in Jackson, Louisiana. Pursuant to a plea bargain, he entered an Alford plea[1] to an amended charge of simple burglary of an inhabited dwelling and was sentenced to a term of twelve years imprisonment on October 1, 2013.[2] On December 10, 2013, he then pleaded guilty to being a second offender and was resentenced as such to a term of twelve years imprisonment.[3]

---

[1] A "'best interest' or Alford plea is derived from North Carolina v. Alford, 400 U.S. 25, 91 S. Ct. 160, 27 L.Ed.2d 162, whereby the defendant pleads guilty while maintaining his innocence." Bass v. Morgan, 653 Fed. App'x 299, 302 (5th Cir. 2016).

[2] State Rec., Vol. 2 of 2, transcript of October 1, 2013; State Rec., Vol. 1 of 2, minute entry dated October 1, 2013; State Rec., Vol. 1 of 2, plea form.

[3] State Rec., Vol. 1 of 2, transcript of December 10, 2013; State Rec., Vol. 1 of 2, minute entry dated December 10, 2013; State Rec., Vol. 1 of 2, plea form.

After his subsequent efforts to obtain post-conviction relief in the state courts proved unsuccessful, petitioner, through counsel, filed the instant federal habeas corpus application claiming that he received ineffective assistance of counsel in connection with his pleas.[4] In its response, the state concedes that the application is timely but argues that petitioner's claim has no merit.[5]

The clearly established federal law governing ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the United States Supreme Court established a two-prong test for evaluating such a claim. Specifically, a petitioner seeking relief must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. Id. at 697. A petitioner bears the burden of proof on the claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as

---

[4] Rec. Doc. 1.
[5] Rec. Doc. 13.

of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the Strickland test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. More specifically, in order to satisfy the prejudice prong of an ineffective assistance of counsel claim in a case involving a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also James v. Cain, 56 F.3d 662, 667 (5th Cir. 1995).

In his federal application, petitioner claims that his counsel was ineffective for failing to advise him that his sentence would render him ineligible for both parole and the possibility of a diminution of his sentence based on "good time."[6] The record reflects that, after holding an evidentiary hearing,[7] the state district court denied the claim, making the following relevant observations:

> [Defendant] complains that his counsel, Mr. Cormier, was ineffective in that he failed to inform defendant at the time of his Alford plea that he would be subject to habitual offender sentence enhancement with no opportunity to earn "good time." Defendant testified at the evidentiary hearing that if he had known he was agreeing

---

[6] Because petitioner's statement of his claim in his original federal application was unclear, the Court ordered that he "file a supplemental brief clarifying whether petitioner is claiming that his trial counsel failed to properly advise him as to (1) eligibility for parole, (2) eligibility to earn a diminution of his sentence based on 'good time,' or (3) both." Rec. Doc. 16. Petitioner complied with that order and clarified that his claim encompasses both. Rec. Doc. 19.
  The Court additionally notes that the state has submitted a supplemental brief taking that the position that, as a result of a change in the law in 2017, petitioner is in fact eligible to be considered for parole upon having served twenty-five percent of his sentence. Rec. Doc. 17. However, even without considering that change in the law and what effect it may have upon petitioner's claim, the Court finds that the claim independently fails for the reasons explained in this opinion.

[7] The transcript of that hearing is attached to petitioner's federal application. Rec. Doc. 1-2, pp. 31-50 and 54-60.

3

to be re-sentenced to serve "flat time" as a habitual offender, he would not have entered an Alford plea to the underlying offense.
….
… Defendant testified at the evidentiary hearing that prior to entering into the plea agreement, he met with his attorney and the district attorney, Mr. Roberts; and neither Mr. Cormier nor Mr. Roberts informed him that he would be serving "flat time." Mr. Cormier testified at the evidentiary hearing that he did not have independent recollection of what he discussed with defendant prior to the Alford plea, but it is his general course of conduct to confer with a defendant prior to entering a guilty plea and to review a habitual offender bill of information with this clients prior to a habitual offender admission. Mr. Cormier further stated that he did not recall anyone telling defendant that if he accepted the proposed plea agreement, he would serve a 12-year "flat" sentence without benefit of parole, probation, or suspension of sentence. None of that testimony indicates whether defendant was promised good time in connection with his plea. Accordingly, the Court finds that defendant fails to show that a promise of good time was part of what defendant bargained for in conjunction with his plea agreement.

In the alternative, defendant argues that he would not have entered into the plea agreement had he known he would be sentenced to "flat time," and that his Alford plea and his habitual offender admission are thus constitutionally infirm. Defendant testified at the evidentiary hearing that he did not understand he would be "double billed," and that consequently, he would be ineligible for good time.
….
Defendant testified at the evidentiary hearing that when he went to court on December 10, 2013, he believed he was there so that the State could dismiss some outstanding charges against him. Defendant further testified that he only went through with the habitual offender admission on December 10, 2013 because he "was scared." The evidence fails to show, however, that defendant was unaware of his agreement to accept a habitual offender sentence.

The transcripts of both the Alford plea and the habitual offender admission show that the Court fully advised defendant of his rights, and defendant stated he understood his rights and did not have any questions for the Court. The transcripts of both proceedings show that defendant informed the Court he is a high school graduate and can read and write the English language. In both proceedings, defendant indicated that he had read and understood the waiver of rights forms containing his rights and his sentencing information. The transcript of defendant's Alford plea to the underlying offense shows that the Court advised defendant of the State's intention to file a "double bill" against him as part of the plea agreement, and that defendant stated he understood. Additionally, the transcripts of defendant's Alford plea and his habitual offender admission and sentencing do not show that the State promised or that the Court awarded defendant good time eligibility in imposing the habitual offender sentence.[8]

---

[8] State Rec., Vol. 1 of 2, Order dated March 19, 2015, pp. 3-6.

4

Petitioner then filed a related writ application with the Louisiana Fourth Circuit Court of Appeal. Although the copy of the state court record furnished to this Court in connection with this federal proceeding does not appear to contain a copy of the Court of Appeal's ultimate ruling, the parties agree that relief was denied by that court on June 17, 2015.[9]

Petitioner thereafter sought further review by the Louisiana Supreme Court, and that court also denied his ineffective assistance of counsel claim on the merits, stating simply: "Relator fails to show he was denied the effective assistance of counsel during plea negotiations under the standard of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)."[10]

Because the Louisiana Supreme Court, the last state court to address petitioner's ineffective assistance of counsel claim, expressly denied the claim on the merits, and because such a claim presents a mixed question of law and fact, this Court must defer to that state court's decision unless the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).[11] Courts have held that the "'contrary to'

---

[9] See Rec. Doc. 1-1, p. 8; Rec. Doc. 13, p. 2. Prior to that denial, the Court of Appeal noted that it must review the relevant transcripts, including the transcript of the evidentiary hearing on January 15, 2015, and it ordered the district court to provide those transcripts for its review. State v. Williams, No. 2015-K-0448 (La. App. 4th Cir. May 11, 2015); State Rec., Vol. 2 of 2.

[10] State ex rel. Williams v. State, 202 So. 3d 479 (La. 2016); State Rec., Vol. 1 of 2.

[11] The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including the standards of review to be applied by the federal courts. The AEDPA amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

    Here, petitioner's counsel faults the summary nature of the Louisiana Supreme Court's decision, noting "no reasoning was provided in the per curiam as to why the defendant's IAC claim did not meet the Strickland v. Washington criteria." Rec. Doc 1-1, pp. 10-11. Therefore, out of an abundance of caution, this Court notes that federal law does not require that state courts provide written reasons for their decisions. As the United States Supreme Court has explained: "[R]equiring a statement of reasons could undercut state practices designed to preserve the integrity of the case-law tradition. The issuance of summary dispositions in many collateral attack cases can enable a state judiciary to concentrate its resources on the cases where opinions are most needed." Harrington v. Richter, 562 U.S. 86, 99 (2011). Moreover, the AEDPA's deferential standards of review apply even when the state courts have given no reasons. On that point, the Supreme Court has expressly held:

and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell v. Cone, 535 U.S. 685, 693 (2002).

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

As noted, the Louisiana Supreme Court correctly and expressly identified Strickland as the clearly established federal law governing petitioner's ineffective assistance of counsel claim. In light of that fact, and because petitioner has not pointed to (and the undersigned's research has not found) a United States Supreme Court case with materially indistinguishable facts reaching a contrary result, he has not established that the state court decision runs afoul of the "contrary to" clause of § 2254(d)(1).

---

> By its terms § 2254(d) bars relitigation of any claim "adjudicated on the merits" in state court, subject only to the exceptions in §§ 2254(d)(1) and (2). There is no text in the statute requiring a statement of reasons. The statute refers only to a "decision," which resulted from an "adjudication." As every Court of Appeals to consider the issue has recognized, determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning. And as this Court has observed, a state court need not cite or even be aware of our cases under § 2254(d). Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a "claim," not a component of one, has been adjudicated.

Id. at 98 (citations omitted).

6

Regarding the statute's "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court has expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

Moreover, the United States Supreme Court has explained that federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
> 
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 562 U.S. 86, 101 (2011) (citation omitted). The Supreme Court then explained:

> Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
>   Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

Id. at 105 (citations omitted; emphasis added).

Therefore, on a habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the benefit of the doubt." Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation marks omitted).

Mindful of those stringently deferential standards of review, the Court finds that petitioner is not entitled to federal habeas relief on his claim that his counsel was ineffective for failing to advise him that his sentence would render him ineligible for both parole and the possibility of a diminution of his sentence based on "good time." Specifically, the Court finds that petitioner has not made the required showing on either prong of the Strickland analysis.[12]

---

[12] The state argues that petitioner also did not prove the factual predicate underlying his claim, i.e. that his counsel failed to provide the advice in question. However, for the reasons explained herein, petitioner's claim clearly fails as

8

On the deficiency prong, a petitioner must establish that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. However, the United States Supreme Court has never held that held that counsel's failure to advise his client that a plea would render him ineligible for parole or "good time" constitutes deficient performance in violation of the Sixth Amendment. See Mitchell v. Quarterman, 285 Fed. App'x 170, 171 (5th Cir. 2008) ("Neither the Supreme Court nor this court has held that a counsel's failure to advise a defendant regarding parole eligibility amounts to ineffective assistance of counsel.").[13] Where, as here, the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).[14]

---

a matter of law. Therefore, out of an abundance of caution, the Court will simply assume for the purposes of this decision that counsel did in fact fail to give the advice regarding parole and "good time" ineligibility as alleged.

[13] On the contrary, the Supreme Court has even expressly sidestepped the issue of whether demonstrably **incorrect** advice on such an issue rises to that level. See, e.g., Hill v. Lockhart, 474 U.S. 52, 60 (1985) ("We find it unnecessary to determine whether there may be circumstances under which erroneous advice by counsel as to parole eligibility may be deemed constitutionally ineffective assistance of counsel, because in the present case we conclude that petitioner's allegations are insufficient to satisfy the Strickland v. Washington requirement of 'prejudice.'"); see also Padilla v. Kentucky, 559 U.S. 356, 384 (2010) (Alito, J., concurring) ("Hill expressly and unambiguously refused to decide whether criminal defense counsel must avoid misinforming his or her client as to one consequence of a criminal conviction (parole eligibility) …." (emphasis omitted)); Johnson v. Cain, Civ. Action No. 02-0720, 2003 WL 21406177, at *7 (E.D. La. June 13, 2003) (Africk, J.) ("Even if counsel gave the erroneous advice [concerning 'good time' eligibility] as alleged, it is not clear whether that fact alone would be sufficient to establish deficient performance under Strickland.").

[14] It is true that the United States Supreme Court has held that counsel's failure to advise his client of *another* consequence of his plea, i.e. deportation, constitutes deficient performance. Padilla, 559 U.S. at 366-69. However, a Supreme Court holding on a similar but nevertheless distinct issue does not suffice to overcome the deference mandated by the AEDPA. On the contrary, the Supreme Court has held:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; *it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision.* AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

White v. Woodall, 134 S. Ct. 1697, 1706 (2014) (citations and quotation marks omitted; emphasis added).

9

Second, in any event, the Court finds that petitioner's claim also clearly fails on the "prejudice" prong of the Strickland analysis. As noted, in order to satisfy Strickland's prejudice prong in a case involving a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. It is true that petitioner testified at the evidentiary hearing that he would not have entered his plea if he had known he would be required to serve the full term of his twelve-year sentence;[15] however, courts are not required simply to accept such self-serving testimony as true. See Lee v. United States, 137 S. Ct. 1958, 1967 (2017) ("Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences."); Hartshorn v. Prince, Civ. Action No. 12-1359, 2012 WL 3860469, at *9 (E.D. La. July 30, 2012) (Shushan, M.J.) ("[D]espite his self-serving allegations to the contrary, the Court finds that it is not reasonably probable that petitioner would have rejected this extremely generous plea agreement. As a result, he has not established the prejudice required to support his claim."), adopted, 2012 WL 3862352 (E.D. La. Sept. 5, 2012) (Berrigan, J.). Here, the Court finds that petitioner's testimony is not alone sufficient to meet his burden of proof in light of the totality of the circumstances.

As an initial matter, the Court notes that petitioner's counsel essentially argues that petitioner's decision to enter an Alford plea made no sense if he knew he would be ineligible for parole and "good time" – because, even with his plea, he *still* received *maximum* possible sentence on the underlying crime, i.e. twelve years.[16] However, that argument is disingenuous in that it conveniently ignores that petitioner nevertheless significantly benefited from the plea agreement

---

[15] Rec. Doc. 1-1, p. 43 (Transcript of January 15, 2015, p. 13).
[16] See, e.g., Rec. Doc. 1-1, p. 20.

10

in light of the fact that he was an *habitual offender*. Both petitioner and his trial counsel acknowledged on the plea form that his maximum sentence was "[t]welve yrs. *plus triple bill exposure*."[17] However, in exchange for his plea, the state agreed to file only a "*double bill*,"[18] i.e. a bill of information alleging that petitioner was merely a *second* offender. Moreover, as a second offender, petitioner faced a possible maximum sentence of *twenty-four* years, **not** the *twelve* years he ultimately received pursuant to the plea agreement.[19] Therefore, through the plea agreement, he managed to cut his sentencing exposure in half.

The Court also makes two additional observations.

First, although petitioner now suggests that the availability of parole and "good time" eligibility was of primary importance to him, he made no inquiry whatsoever on that issue at the time of the entry of his Alford plea and sentencing,[20] at a subsequent sentencing hearing,[21] or at his habitual offender hearing.[22] His continued silence on the issue at those hearings is difficult to square with his *post hoc* protestations that the issue was such a paramount concern to him that its unavailability, in and of itself, would have caused him to reject the otherwise generous plea bargain. See Czere v. Butler, 833 F.2d 59, 64 (5th Cir. 1987) (noting that the fact that a petitioner never "specifically asked" about parole eligibility supported a finding that such eligibility was only a "fringe concern" at the time he entered his plea).

Second, petitioner has offered no evidence indicating that the prosecution, if required to so, would have been unable to prove either his guilt on the underlying charge or his status as a

---

[17] State Rec., Vol. 1 of 2, plea form dated October 1, 2013 (emphasis added).
[18] Id. (emphasis added).
[19] State Rec., Vol. 1 of 2, transcript of December 10, 2013, pp. 6-7.
[20] State Rec., Vol. 2 of 2, transcript of October 1, 2013.
[21] State Rec., Vol. 1 of 2, transcript of November 4, 2013.
[22] State Rec., Vol. 1 of 2, transcript of December 10, 2013.

second offender.[23] As a result, he has not shown that he in fact gave up a reasonable chance of acquittal or a lesser sentence by entering his pleas – and, obviously, if he had little to lose by entering the pleas, then that fact necessarily undermines his suggestion that he would have rejected the advantageous plea bargain offered. See Lee v. United States, 137 S. Ct. 1958, 1966 (2017) ("A defendant without any viable defense will be highly likely to lose at trial. And a defendant facing such long odds will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial. … [That is] because defendants obviously weigh their prospects at trial in deciding whether to accept a plea. Where a defendant has no plausible chance of an acquittal at trial, it is highly likely that he will accept a plea if the Government offers one." (citation omitted)).

In light of all of these considerations, the Court finds that petitioner has failed to prove that there is any reasonable probability he would have declined the plea offer and insisted on going to trial *even if* defense counsel had warned him that he was ineligible for parole and "good time." Therefore, he has not established that he was prejudiced by counsel's failure to do so.

In summary, to be entitled to relief, petitioner must demonstrate that the state court decision rejecting his ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. He has not made that showing in the instant case. Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

One final note: petitioner's counsel additionally argues that the post-conviction proceedings in the state courts were marred by procedural errors, including a failure to provide

---

[23] Even now, he does not dispute that he is in fact a second offender. See, e.g., Rec. Doc. 19, p. 2 ("Petitioner does not contest the prior felony that caused him to be treated as an habitual offender.").

petitioner with a copy of the transcript of the evidentiary hearing. However, that argument is misplaced in this federal proceeding. Although petitioner's counsel refers to his federal application as an "appeal" of the Louisiana Supreme Court's decision,[24] federal habeas corpus proceedings are **not** the functional equivalent of an appeal. Rather, as the United States Supreme Court has explained: "[H]abeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal*." Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (quotation marks omitted; emphasis added).

Further, it is beyond cavil that federal habeas corpus relief cannot be granted to remedy errors that purportedly occurred in state post-conviction proceedings. As the United States Fifth Circuit Court of Appeals has explained:

> [O]ur circuit precedent makes abundantly clear that errors in state postconviction proceedings will not, in and of themselves, entitle a petitioner to federal habeas relief. See, e.g., Hallmark v. Johnson, 118 F.3d 1073, 1080 (5th Cir. 1997) ("[I]nfirmities in state habeas proceedings do not constitute grounds for relief in federal court."); Nichols v. Scott, 69 F.3d 1255, 1275 (5th Cir. 1995) ("An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself.") (internal quotations omitted). Rather, we must find constitutional error at the trial or direct review level in order to issue the writ.

Morris v. Cain, 186 F.3d 581, 585 n.6 (5th Cir. 1999); accord Duff-Smith v. Collins, 973 F.2d 1175, 1182 (5th Cir. 1992); Pamilton v. Warden, Avoyelles Correctional Center, Civ. Action No. 11-cv-1433, 2014 WL 4629669, at *9 (W.D. La. Sept. 15, 2014) (Stagg, J., adopting report and recommendation of Hornsby, M.J.) ("Petitioner argues that the state court's rejection of his post-conviction application was erroneous because the court did not allow him access to a free trial transcript or generally permit a fair opportunity for him to present his claims. This claim fails because infirmities in State habeas proceedings do not constitute grounds for relief in federal

---

[24] See Rec. Doc. 1-1, p. 4.

court." (quotation marks omitted)); Anderson v. Cooper, Civ. Action No. 10-1691, 2011 WL 666845, at *14 (E.D. La. Jan. 19, 2011) (Shushan, M.J.) ("[P]etitioner claims that the state violated his rights by failing to produce a transcript of the post-conviction hearing …. However, because this claim concerns only the state post-conviction proceedings and does not affect the validity of petitioner's underlying conviction or sentence, it is not cognizable in this federal habeas corpus relief and cannot serve as a basis for relief."), adopted, 2011 WL 666874 (E.D. La. Feb. 14, 2011) (Zainey, J.). Although application of that rule often proves harsh, the Fifth Circuit has emphatically held that it must nevertheless be followed, stating:

> We, as a federal appeals court entertaining a *federal* habeas corpus application, are without jurisdiction to review the constitutionality of [the petitioner's] state postconviction proceedings. Indeed, we are barred from doing so by our "no state habeas infirmities" rule. ... [O]ur hands are tied by the AEDPA, preventing our review of [the petitioner's] attack on his Louisiana postconviction proceedings, so we dutifully dismiss his claim.

Kinsel v. Cain, 647 F.3d 265, 273-74 (5th Cir. 2011) (footnote omitted).

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Jonathan Williams be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[25]

New Orleans, Louisiana, this eighteenth day of June, 2018.

*[signature]*

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[25] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.